# EXHIBIT B

**PRELIMINARY STATEMENT**[1]

THP has had *three* opportunities to allege or explain how BDG's passive maintenance of a website, which contained embeds of allegedly infringing content posted on another site by someone else seven years before BDG was even involved with that website, makes BDG liable for copyright infringement. *First*, via its original Complaint, which the Court dismissed, holding that "BDG's acqui[sition] and [] manage[ment] [of] Flavorwire, which host[ed] a 2011 article displaying Plaintiff's copyrighted work[,]" is not a "volitional act of copyright infringement." Order at 3. *Second*, by way of THP's Amended Complaint, which added more irrelevant allegations regarding BDG's *general maintenance and management* of its websites (*e.g.*, site-wide updates *over seven years* after the photographs were embedded) and links on Pinterest that THP does not even allege BDG posted, as well as a whole new cause of action for indirect infringement. *Lastly*, in THP's Opposition, it had yet another opportunity to resuscitate its already-rejected claims. But THP has run out of angles, copying nearly two pages *verbatim* of its opposition to BDG's original motion to dismiss (parts of which the prior Court rejected in its previous Order), manufacturing arguments never made by BDG, and effectively conceding the lack of merit in its secondary liability claims by failing to meaningfully address them.[3]

---

[1] Defined terms used herein have the same meanings as set forth in BDG's opening brief ("Mot."; D.I. 27).

[3] As referenced in its Motion (Mot. at 12) and in its March 23, 2021 letter to the Court (D.I. 32), THP was never granted leave to file its most recent version of the Amended Complaint, so it should be dismissed for that reason alone. *See, e.g., Palm Beach Strategic Income, LP v. Salzman,* 457 F. App'x 40, 43 (2d Cir. 2012). Indeed, leave was granted only after THP submitted a prior version of its Amended Complaint (*see* D.I. 21-1), which version did not contain the entirely new cause of action for indirect infringement. The case cited by THP for the proposition that a plaintiff may amend as of right after being granted leave highlights the distinction it is overlooking: in *Gilman & Bedijian, LLC v. Sackett*, 2020 WL 5338995 (D. Md. Sept. 4, 2020), the plaintiff submitted to the court the version of the complaint it intended to file, *which the Court then reviewed* and approved. *See Gilman*, D.I. 18, Marginal Order (Feb. 10, 2020).

1

THP takes yet *another* bite of the apple via its Supplemental Opposition Brief ("Supp. Opp. Br."; D.I. 48). Indeed, after Judge Noreika transferred this case *and the pending motion* to the Southern District of New York – which THP agreed to on the condition that the current Motion was transferred (D.I. 34 at 7) – this Court directed the parties to both file supplemental briefs updating such briefs with "caselaw from this circuit where possible," D.I. 40, and BDG complied accordingly (D.I. 47). Conversely, THP added new substantive arguments, citations to cases from other Circuits which were available when its original Opposition was filed, and arguments responsive to BDG's original Reply Brief, which had been served on THP in accordance with Judge Noreika's April 1, 2020 Order. D.I. 33; *see also* D.I. 42 (explaining logistics of the transfer as it relates to the briefing of this Motion). To the extent BDG reached out to THP to discuss the Court's applicable limitation (Supp. Opp. Br. at 2-3), it was simply to confirm that THP understood and would comply with the Court's directive – and to avoid exactly what happened: THP's use of the transfer to buy time and benefit from previewing BDG's briefing.[4]

What THP cannot plead or argue around is the fact that BDG had nothing to do with the purported infringement at issue. Remarkably, THP fails to address the fact that, before it even first contacted BDG about the purported third-party infringement (which occurred long before BDG had any involvement with the website at issue), the material had already been removed. This lawsuit is THP's last-ditch effort to get BDG on the hook for something it had nothing to do with, at the expense of now multiple courts' valuable resources. As THP has been given numerous

---

[4] For the Court's reference, and to explain why many of the updates to BDG's Supplemental Reply are needed, annexed to the Declaration of Eleanor M. Lackman, dated July 7, 2021 ("Lackman Decl."), as Exhibit 1, is a comparison of THP's original Opposition Brief ("Opp. Br."; D.I. 34) to its Supp. Opp. Br. *See also Lackman Decl.,* Exh. 2 (comparison of BDG's Reply Brief, served on THP on April 19, 2021, to its Supplemental Reply Brief). As the Court will see, THP's additions made outside the scope of the Court's Order are the reason for any substantive changes herein.

2

chances to properly plead its case without success, this action should be dismissed with prejudice.

**ARGUMENT**

**I.      THP's Proposed Limitations on What the Court May Consider on a 12(b)(6) Motion are Not in Line With the Law in this Circuit**

Attempting to benefit from previewing BDG's Reply, and frustrating the Court's directive to limit the supplemental briefing to the addition of Second Circuit case law, THP adds three new, misguided arguments dictating what this Court may consider on a motion to dismiss. THP argues, variously, that this Court may not consider, *inter alia*, the allegations in the original Complaint, the transferor court's ruling on BDG's original motion to dismiss, the sworn declarations and exhibits thereto submitted *on this motion*, and memorialized screenshots (which were publicly available when the Complaint was filed) showing the subject article as it appeared online. Supp. Opp. Br. at 8-9, 18. While THP certainly has a strong incentive to obscure this type of evidence on a claim with a value that does not exceed the cost of discovery,[5] the law does not support THP's tactic. *See, e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (in copyright case, documents incorporated by reference include "works in question"); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (notice of documents "integral" to the complaint); *Minden Pictures, Inc. v. BuzzFeed, Inc.*, 390 F. Supp. 3d 461, 466 (S.D.N.Y. 2019) (considering screenshots from defendant of posts containing the works); *Colliton v. Cravath, Swaine & Moore, L.L.P.*, No. 08–CV–0040 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24,

---

[5] THP is a demonstrated serial litigator. Mullins Decl. ¶¶ 6-10 & Exhs. D-F. *See McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 1033240, at *3, n.4 (S.D.N.Y. Feb. 22, 2018) (explaining that volume plaintiffs play "a numbers game," targeting many defendants and seeking "quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim").

3

2008) (considering facts in original complaint "[w]here a plaintiff blatantly changes his statement of the facts [] to respond to [a] motion to dismiss"); *Ferrari v. Cty. of Suffolk*, 790 F.Supp.2d 34, 38 n.4 (E.D.N.Y. 2011) ("judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*"); *see also* BDG's Supp. Mov. Br. at 7.[6]  In any event, for reasons explained below, the face of the Amended Complaint demonstrates that THP has failed to cure the deficiencies that Judge Noreika found, and fails to set forth a cognizable claim for indirect liability either.

II. **THP's Interpretation of the "Volitional Act" Requirement for Direct Infringement is Off-Point for the Reasons Already Articulated by the Delaware Court**

Despite having multiple previews of arguments why BDG's passive display of the articles at issue following its acquisition does not constitute a "volitional act," THP maintains the same false narrative. But repetition does not yield merit, and the Delaware Court was entirely correct in its prior rejection of THP's arguments.  For example, THP argues in its Opposition, relying again on the heavily criticized *APL Microscopic* from the Third Circuit, that each website visit results in BDG committing an act of infringement.  Opp. at 13.  The Delaware Court already specifically rejected this argument (Order at 6) the first time THP briefed it.  *Compare* D.I. 14 at 5-7, with D.I. 34 at 12-14 (two to three pages copied *verbatim*, starting with, "There is nothing in the Copyright Act to suggest . . .").[7]  Nothing warrants a different outcome here, particularly where THP's

---

[6] THP's argument that Individual Rule III.D does not permit the incorporation by reference of accompanying declarations or affidavits is misplaced, as those documents were already submitted in connection with *this very motion*.  *See* D.I. 29, 30.

[7] THP's addition of a citation to *Petrella v. Metro-Goldwyn-Mayer, Inc.* – a Supreme Court case that could have easily been cited in its original Opposition – does not move the needle.  572 U.S. 663, 671 (2014); Supp. Opp. Br. at 15.  In the portion of *Petrella* cited, the dispositive issue was not whether the defendant committed a volitional, infringing act, but rather the application of laches to a series of ongoing acts.  Indeed, the Court in *Petrella* clearly provided that acts occurring prior to the statute of limitations period were not actionable.  *See Petrella*, 572 U.S. at 667

4

arguments here are identical.[8] *See* Order at 5, n.1 (noting that THP "ignor[ed] the volitional conduct requirement"). Furthermore, as argued in BDG's opening brief, THP's allegation, on "information and belief," that BDG employees "necessarily" created copies of the webpages containing the embedded Photographs in order to add display advertising or perform other general updates is entirely implausible. Indeed, it reflects a gross misunderstanding of how websites operate; it also conflicts with prior allegations that the Photographs were hosted on WordPress and embedded by inline linking from WordPress into the Flavorwire site. D.I. 1 ¶ 13.[10]

THP fails to allege that BDG made *any* alterations to the embedded content itself, which is the only content that is alleged to be infringing. Nor does THP attempt to explain how the addition of advertising to a page that contains previously-embedded links constitutes a new act of infringement with respect to that embedded content under 17 U.S.C. § 106. Opp. at 5.

Acknowledging the deficiency of its already-rejected arguments, THP introduces a new, misplaced theory about the "volitional act" requirement; THP speculates that it "singularly applie[s] to service providers who make their internet platforms available to third parties to post and display content of the third parties' choosing," that BDG is seeking (at this time) to insulate itself via the DMCA's safe harbor provision, and that there is no case law holding that the mere

---

("Section 507(b), it is undisputed, bars relief of any kind for conduct occurring prior to the three-year limitations period.").
[8] *APL Microscopic* is also distinguishable because there, unlike here, the defendant had uploaded and directly posted the infringing material to its own server. *See APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 492, 494 (Fed. Cl. 2019). *APL Microscopic* also did not address volitional conduct, as Second Circuit law requires. *Id.* at 499.
[10] *See Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, *4 (N.D. Cal. Feb. 9, 2010) (prior allegations may be considered on motion to dismiss under *Iqbal*); *see also supra* at pp. 3-4. Moreover, as THP does not dispute, such updates are conducted through alterations to the website's underlying code, not by creating copies of individual webpages and manually adding specific ads or content such as photographs.

5

passive display of online content does not constitute "volitional conduct." Opp. at 10-11.  These arguments fail for multiple, independent reasons.

*First*, BDG has not claimed (to date) "immunity" under the DMCA's safe harbor.  In any event, this red herring argument should be rejected outright.  The "volitional conduct" requirement is separate and distinct from the DMCA's safe harbor, as recognized by other courts to have considered THP's argument.[11]  *Second*, THP's claim that BDG "does not cite any case, and Plaintiff has not located any case," holding that the display of content on a website owned and controlled by a defendant does not constitute a "volitional act" is disingenuous, given that the exact conclusion was reached *in this case*, in a litany of other cases cited in BDG's brief, and in the Court's previous Order. *See* D.I. 28 at 8-12; Order at 3-6.[12] *Third*, THP's assertion that the "volitional act" requirement only applies to internet service providers ("ISPs") "who make their internet platforms available to third parties to post and display content of the third parties' choosing" is a fabrication that disregards decades of copyright law, and *Netcom* is off-point.[13] Opp.

---

[11] *See, e.g., CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) (upholding volitional conduct requirement; "the DMCA is irrelevant to determining what constitutes a prima facie case of copyright infringement"); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 n.4 (9th Cir. 2007) ("[T]he DMCA does not change copyright law.").

[12] And again, THP has not alleged that BDG is the party that initially embedded code linking to THP's alleged photographs. *See BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 442 (5th Cir. 2017) (no liability where "[defendant] hosts the forum on which infringing content was posted, but its connection to the infringement ends there"); *see also Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 123 (S.D.N.Y. 2015) (no liability where website hosted sample of electronic book after termination of license, even though user later accessed and downloaded copies), *aff'd on other grounds*, 839 F.3d 163 (2d Cir. 2016).

[13] *Netcom*, a pre-DMCA case, involved material being produced through an automated process. *See Religious Technology Ctr. v. Netcom On-Line Comm. Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995). Even so, *Cablevision*, discussed *infra* at n. 14, specifically clarified the scope of *Netcom*. The fact that THP does not even reference *Cablevision* is another example of its blinkered view of the "volitional act" requirement and its disregard for clear precedent on this issue. *Aereo* involved an entity's active, affirmative acts of taking broadcast streams and retransmitting them

6

at 10. The leading cases on this issue show that such a principle is not so limited: they did not involve ISPs at all, and instead concerned parties who supplied their own content, without involvement of a user. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008) ("*Cablevision*"); *Fox Broad. Co., Inc. v. Dish Network L.C.C.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013).[14] THP's new reliance on *Ohio State Univ. v. Redbubble, Inc.* (Supp. Opp. Br. at 13, 18) – which, notably, was available to be cited before THP filed its original Opposition and is not a Second Circuit decision – is tellingly misplaced, as *Redbubble* did not involve copyright infringement, and was decided under Lanham Act precedent concerning the meaning of a "seller" under that Act for purposes of *trademark* infringement.  *See* 989 F.3d 435, 448 (6th Cir. 2021). Thus, the volitional conduct question under copyright law was not at issue.  *Id.*  The *dicta* that THP cites to in *Capitol Recs, LLC v. ReDigi* is similarly off-base, as it relates to whether individual defendants could be indirectly liable once direct infringement was already established (not whether a party can be liable for infringement it took no part in, had no awareness of, and did not contribute to in any way).  *See* No. 12-CV-95 RJS, 2014 WL 4354675, at *2 (S.D.N.Y. Sept. 2, 2014).

Instead of actually refuting the arguments BDG does make, THP manufactures its own: "Defendant's argument appears to be premised on the implicit argument that a website owner only

---

live to multiple members of the public in violation of Section 106(4) of the Copyright Act, which is not a section implicated here.  *ABC, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2504 (2014).

[14] In *Cablevision*, the defendant cable company provided its own product from which a user could stream back Cablevision's TV content; *i.e.*, it was not hosting third-party content of such third party's choosing. Indeed, the district court in *Cablevision* specifically stated that Cablevision was **not** "similarly situated to an ISP . . . [because it is] not confronted with the free flow of information that takes place on the Internet, which makes it difficult for ISPs to control the content they carry." *Twentieth Century Fox Film Corp. v. Cablevision Sys. Corp.*, 478 F. Supp. 2d 607, 620 (S.D.N.Y. 2007), *rev'd in part on other grounds sub nom. Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008). Ultimately, the Second Circuit applied the "volitional conduct" requirement broadly, dismissing the case. *Cablevision*, 536 F.3d at 131.

commits a volitional act if it makes and posts the original infringing copies to its website." Opp. at 11. This purposely inverts BDG's argument, which is that the acquisition and maintenance of a website does not constitute an "act" that violates one of the exclusive rights under the Copyright Act. Regardless, THP's reliance on *Zillow* for the proposition that "[a]ctions by website owners designed to make infringing images posted by third parties more likely to be viewed by website visitors [may] constitute volitional acts" – is misplaced. Opp. at 11, 12 (frequently misidentifying *VHT* as *VMT*). Tellingly, THP does not quote from *Zillow*.[15] And for good reason: the actual language of the decision runs against THP's argument; indeed, the *Zillow* court agreed that the type of conduct THP alleges in this case – *i.e.*, "behind-the-scenes technical work" – does *not* amount to volitional conduct.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 738 (9th Cir. 2019).

BDG does not advocate for an "expansive interpretation" of a "volitional act" requirement. Opp. at 2. To the contrary, it advocates for the exact interpretation made by courts that have addressed the issue.  BDG's "behind-the-scenes technical work" in connection with Flavorwire, whether by updating its code or adding new content, simply is not the sort of "volitional conduct" necessary to state a claim of direct infringement with respect to those specific photographs.

**III.  The "Factual Issues" THP Manufactures are Red Herrings**

Mindful of the prior dismissal, THP argues anew that its new allegations with respect to purported "specific affirmative actions BDG took." concerning the pages that contained inline

---

[15] Rather than actually cite to *VHT*, THP instead quotes (and mischaracterizes) an unpublished district court decision, *Williams-Sonoma, Inc. v. Amazon, Inc.*, No. 18-CV-07548-EDL, 2019 WL 7810815 (N.D. Cal. May 2, 2019). There, the court denied Amazon's motion because the plaintiff alleged that Amazon specifically selected certain material uploaded by third parties to be displayed on its website. Here, at most, THP alleges only that BDG did not actively remove the pre-existing embedded links to the Photographs when it acquired the Flavorwire website.

8

Case 1:21-cv-03514-AT   Document 51-3   Filed 07/07/21   Page 10 of 17

links to the WordPress site where the images were hosted as of 2011, make out a viable claim for direct copyright infringement. Opp. at 3; D.I. 26 ¶¶ 12-18, 23-33, 35-37; *see also* Supp. Opp. Br. at 20 (cabining the analysis of what the Court should look at in determining whether BDG violated one of the enumerated rights under Section 106 to: "affirmatively adding new revenue producing content to the BDG Display Pages . . . establishing a Use License . . . and displaying the Copyrighted Works on Pinterest posts to draw visitors to the site").[16]  These irrelevant allegations cannot conceivably constitute "volitional conduct" for the reasons already detailed by the Delaware court and as BDG's authorities show.

For example, BDG's site-wide updates to Flavorwire's Privacy Policy, Copyright Policy, Terms of Service ("TOS"), and sitemap, are back-end technical processes that have nothing to do with the infringement.[17] THP does not cite any cases providing that this type of general maintenance constitutes volitional conduct; rather, many cases hold just the opposite. *See*, *e.g.*, *Zillow*, 918 F.3d at 738. Similarly, the use of display advertising that updates without any intervention from BDG is insufficient to impute liability on BDG. To be actionable, THP must allege that BDG engaged in volitional conduct with respect to the Photographs themselves – not that BDG merely made general updates to its website that may have impacted the appearance of individual pages, but without any impact on the alleged display of the Photographs.[18]

---

[16] THP expressly distinguishes between Flavorpill and Flavorwire, recognizing that Flavorpill, the entity, was responsible for the subject post under the Flavorwire brand that BDG subsequently acquired.  Supp. Opp. Br. at 11, n.6.

[17] To the extent THP implies that BDG's "Use License," which is located in its Terms of Service, grants to users a license to use the works at issue as they wish, this is a misrepresentation. Opp. at 4. D.I. 26 ¶ 16.  The "Use License" simply permits users to navigate BDG's websites, and not to use any content for any other purpose.

[18] THP further alleges that, "[w]ithout obtaining discovery from BDG, Plaintiff cannot know, and the Amended Complaint does not allege, when the URL pages containing the Copyrighted Works were last coded for public display when owned by Flavorpill." Opp. at 5. What THP does not

9

THP also argues that the use of the photographs on website Pinterest (which is not alleged to be owned or controlled by BDG), which page linked back to Flavorwire, is an act of infringement by BDG. Opp. at 14-15; D.I. 26, ¶ 39, Ex. M. The face of the Pinterest Post (annexed to the Amended Complaint as Ex. M) shows that the link to the article was posted by "Flavorwire," and that it has the same content as the article at issue. *See* D.I. 26, ¶ 39, Ex. M. THP does not allege that BDG posted the works on Pinterest, much less that it did so "since August 18, 2018," which THP claims is the only relevant time period for purposes of BDG's purported infringement. Opp. at 2. In other words, THP again fails to allege any illegal volitional conduct *by BDG* with respect to the Photographs; rather, it merely alleges that the Photographs remain "display[ed] and [used]" on a website, Pinterest, that BDG is not even alleged to own, operate, or control.[19] In its new brief (at 7 n.2), THP essentially concedes that the Pinterest Post only served as a link to the article; even if BDG posted it (which it could not have, given the timing), it would not be infringement.[20]

Finally, THP disingenuously argues, for the first time, that "[t]here is no allegation in the Amended Complaint, or any document on which those allegations rely, that would permit the conclusion that the Copyrighted Works were publicly displayed and capable of being found on the Website as owned by Flavorpill prior to BDG's asset acquisition and modifications to the BDG Display Pages beginning in August 2018." Supp. Mov. Br. at 6. This is false, as the article,

---

explain, however, is how coding by BDG would establish volitional conduct with respect to the alleged infringement at issue. THP's insistence that it needs to know the date the works were "last coded for public display when owned by Flavorpill" is a red herring, particularly where THP does not even allege that any works were "re-coded."

[19] In its opposition, THP does not mention much less controvert the fact that its claim that the Pinterest posts are "currently" displayed is demonstrably false, as is THP's claim that BDG has refused to take steps to remove the Photographs. *See* D.I. 30 ¶ 16, Ex. 2.

[20] THP's argument regarding the Pinterest Post completely ignores how Pinterest works, and is a transparent attempt to manufacture a sham issue of fact. *See Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) (sanctions where reasonable inquiry would have shown falsity).

annexed to the Amended Complaint, clearly shows that the Article was posted in 2011 on the Flavorwire website.  *See* D.I. 26, Exh. G; *Minden*, 390 F. Supp. 3d at 465-66 (granting 12(b)(6) motion based on dates included in screenshots of the purportedly infringing articles).

IV.   **THP Effectively Concedes Its Indirect Infringement Claims Should Be Dismissed**

Implicitly accepting the weakness of its arguments, the portion of THP's original Opposition addressing its insufficiently pleaded secondary liability contains no legal analysis or counter, but rather merely recites the elements of a claim and then broadly references allegations in the Amended Complaint. Opp. at 15-17. THP's failure to meaningfully address BDG's arguments in its moving brief on this point is itself grounds for dismissal of the indirect liability count. *See, e.g.*, *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n. 11 (S.D.N.Y. 1997) (failure to provide argument is "independent basis for dismissal"), *aff'd*, 130 F.3d 1101 (2d Cir. 1997), *cert. denied*, 525 U.S. 813, 119 S.Ct. 48 (1998).

Notably, THP considerably modifies its supplemental briefing on this issue outside the scope of the Court's directive, citing out-of-circuit cases that were available when it filed its original papers, adding new references to allegations from the Amended Complaint in an attempt to bolster its arguments, and supplementing portions to counter arguments made in BDG's original Reply.[22]  Because THP is taking advantage of the Court's directive for its own tactical advantage, this portion of the brief should be stricken.

In any event, THP does not even dispute that its Amended Complaint fails to allege "direct infringement by a third-party" – a necessary element of a cause of action for contributory liability

---

[22] For example, BDG argued in its original Reply (and here) that THP insufficiently pleaded "material contribution" sufficient to sustain a cause of action for contributory infringement.  In its Supplemental Opposition Brief, on this point, THP added an entire paragraph with five citations to the Amended Complaint. Supp. Opp. Br. at 17-18.

11

(*see* Mot. at 13). Rather, THP seems to claim that BDG already knows that the only third-party that THP claims has directly infringed its Photographs is Flavorpill, 10 years ago.[23] The argument that BDG can guess the basis for THP's purported claim is not a substitute for a burden of pleading its causes of action, much less its failure to even identify the direct infringer.

In response to BDG's argument that THP failed to sufficiently allege the remaining required elements of its contributory liability claim – that BDG had sufficient "knowledge" of the purported infringement, or that BDG "materially contributed" (*i.e.*, acted in concert with a third party with respect to the infringing act) (*see* Mot. at 13) – THP singularly argues that a sophisticated party is inherently on notice under contributory liability theories. Opp. at 16. However, THP fails to cite any case standing for this proposition, and it cannot explain away the cases involving "sophisticated entities" like Google, where they were held not to have "knowledge" of the infringement. Mot. at 13. But more fundamentally, THP fails to allege that BDG had knowledge of Flavorpill's embedding of the Photographs to the Flavorwire Website in 2011. Nor could it, as THP concedes BDG had no involvement with the website until 2018.[24]

THP then claims in a conclusory fashion that "[a]ll of Defendant's specific acts cited in [*sic*] Amended Complaint and recited in Section III above materially contributed to the infringing display of the Copyrighted Works." In its Opposition, THP cited no case law in support of its

---

[23] As noted, Flavorpill Productions LLC is an entity that BDG does not own or control.
[24] THP argues so vehemently against the Court taking judicial notice of the screenshot, demonstrating that the images at issue were removed before the action was even initiated, because it further cuts against THP's allegation that there was any dispute whether the images at issue had been timely removed following notice.  Supp. Opp. Br. at 18, n.10. But the law permits review of such material. *See, e.g.*, *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-CV-03132-WHO, 2019 WL 6219223, at *2, n.1 (N.D. Cal. Nov. 21, 2019) (taking judicial notice of website screenshots "[b]ecause Planner 5D repeatedly refers to its website and includes its web address in the Complaint").  Notably, THP does not challenge the authenticity or accuracy of the screenshot.

12

argument that this collection of assertions is sufficient to show material contribution to an act that preexisted BDG.[25]  Regardless, BDG has already explained why these "acts" did not materially contribute to the purported infringement under applicable law (Mot. at 14), and THP should not be able to assert claims it cannot justify under the standard.  Again, nothing in THP's Complaint ties BDG in any way to Flavorpill's supposed infringing act – embedding the Photographs in 2011 – much less plausibly alleges that BDG in any way acted in concert with Flavorpill or otherwise contributed in any way to Flavorpill's alleged infringement *and* with knowledge that it was contributing to such infringement.[26]

THP's new allegations purportedly relating to "material contribution" and "inducement" are nonsensical, *see* Supp. Mov. Br. at 18 ("BDG induced Flavorpill to transfer the infringing images to BDG through payment to Flavorpill"), and are nevertheless misplaced, as they do not sufficiently allege a direct connection between BDG and *the original infringing act – i.e.*, the initial posting of the images in 2011.[27]  *See, e.g.*, *Abbey House Media, Inc. v. Apple Inc.*, 66 F. Supp. 3d 413, 420 (S.D.N.Y. 2014) (dismissing contributory liability claim where the "aid provided lack[ed]

---

[25] In its original Reply, BDG similarly pointed out that no case law was cited to for this proposition.  In its Supplemental Opposition Brief, THP now includes a cursory reference to *Redbubble*, which, for the reasons described *supra* at p. 7, is inapposite.  This is another example of THP abusing the supplemental briefing process.  Indeed, the only case cited in THP's original Opposition (before it got to preview BDG's arguments) allegedly supporting any of THP's substantive arguments in this section is from the Ninth Circuit, and it does not discuss the "material contribution" requirement at all.  Opp. at 16 (referencing *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) (incorrectly cited as "9*62* F.3d 822, 829 (9th Cir. 2019)").

[26] THP mischaracterizes its communication with BDG regarding the date the images were removed, and despite arguing against considering documents integral to the complaint, asks the Court to consider its distorted account of events in connection with BDG's Motion.  Supp. Opp. Br. at 3 & n.9.  Declining to provide detailed and irrelevant information in response to a series of derogatory accusations, over something BDG did not even do, is not copyright infringement.

[27] THP did not plead that the images were "transferred."  *See generally* Dkt. No. 26.  This made-for-briefing allegation cannot be reconciled with the allegations in the Amended Complaint (*id.* ¶ 10), which allege that BDG acquired title to flavorwire.com, which is not an act of infringement under Section 106.

a direct connection to the infringing conduct"); *Brought to Life Music, Inc. v. MCA Recs., Inc.*, No. 02 CIV. 1164 (RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003) ("the contributory infringer must have acted *in concert with the direct infringer*[,]" and collecting cases) (emphasis added). The allegation that THP adds to its Brief – namely, that BDG's subsequent coding on pages containing articles caused the Copyrighted Works to be "displayed more times than they would have been displayed based on Flavorpill's conduct alone" – is not a "material contribution" to the alleged specific infringing act, *i.e.*, adding the photographs to the Article in 2011.

With respect to its vicarious liability claim, THP does not even attempt to explain how BDG had a "direct financial interest" in the infringing activity (*i.e.*, Flavorpill's 2011 use of the Photographs). Mot. at 14-15. *See*, *e.g.*, *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (citations omitted) (dismissing vicarious infringement claim because there was no "direct financial interest"). BDG is only alleged to have had any involvement in the Flavorwire Website after 2018, and THP has not identified infringement by a third-party occurring after that time. Since THP has now clarified that Flavorpill is the only direct infringer on which its contributory infringement claims are premised (despite having failed to do so in its pleading), THP would thus need to plausibly allege *both* that BDG had a right and ability to control Flavorpill's infringing act *in 2011* (which it could not do, given that it did not acquire the website until 2018), and that BDG had a direct financial interest in that infringing act – namely, the use of photographs embedded into a single post that was seven years old at the time, a veritable fossil in the age of media publishing. Here, however, THP does not allege anything other than BDG's general revenues from the overall Flavorwire Website after 2018. THP does not allege that Flavorpill's embedding of the Photographs in a single article seven years early served as a meaningful draw to the Flavorwire Website after 2018, and nor could it plausibly do so, given (among other things)

> **Deleted:** *Parker v. Google, Inc.*, F. Supp. 2d 492, 499-500 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (dismissing claim where no "direct financial interest" alleged).

14

the passage of time.

### V. As the Facts Necessary to BDG's Statute of Limitations Defense are Properly Before this Court on a 12(b)(6) Motion, the Case May Be Dismissed on Such Grounds

This case underscores one of the important policies underlying the enforcement of statutes of limitations: protecting the innocent from stale claims. Here, the only act possibly constituting infringement – the posting of an article on the Flavorwire website and the embedding of certain photographs that were uploaded to Wordpress – occurred ten years ago. As a matter of law, any copyright claim THP might have had (solely against Flavorpill), expired three years after the original posting, and THP concedes that BDG had nothing to do with those events. *See Minden*, 390 F. Supp. 3d at 467 (copyright infringement claim accrues when photographs first posted on website). To the extent THP argues that its "fail[ure] to bring suit on the Copyrighted Works earlier" could not be relevant at this stage (Supp. Opp. Br. at 20), it is mistaken, as *Minden* (which THP fails to acknowledge or distinguish), dismissed under Rule 12 claims as to photographs that plaintiff, a "seasoned litigator," should have discovered within limitations period. THP's citation to out-of-circuit, distinguishable cases cannot resuscitate its claims.[28]

THP's argument that its claims are based on conduct post-dating the expiration of the statute of limitations (*i.e.*, BDG's general maintenance of its entire website, including via regular updates to its overall code, updates to its terms of service, its incorporation of display advertising, and its addition of continuously updated links to other website content), reinforces the fact that this suit comes six years too late, as these actions are *not* acts of copyright infringement, for the

---

[28] *Goodman v. Praxair, Inc.* involved a breach of contract claim, so the plaintiff's ability to discover the purported breach was a thornier issue than here. *See* 494 F.3d 458 (4th Cir. 2007). In *Topline Sols., Inc. v. Sandler Sys., Inc.*, the time bar was not apparent "on the face" of the complaint or via documents the court could take judicial notice of. *See* No. CV ELH-09-3102, 2017 WL 1862445, at *13 (D. Md. May 8, 2017). The only Second Circuit case cited is *Abbas v. Dixon*, an inapposite Section 1983 case. *See* 480 F.3d 636 (2d Cir. 2007).

15

reasons set forth in detail *supra* at pp. 4-14.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening brief, BDG respectfully requests that the Amended Complaint be dismissed, in its entirety, with prejudice.

DATED: July 7, 2021                    MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Eleanor M. Lackman
Eleanor M. Lackman
Bradley J. Mullins
Lindsay R. Edelstein
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
eml@msk.com
bym@msk.com
lre@msk.com

*Attorneys for Defendant*
*BDG Media, Inc.*