# EXHIBIT A



| NEW YORK | | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | STEVEN M. COWLEY | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 857 488 4261 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 857 401 3090 | LAS VEGAS |
| LOS ANGELES | E-MAIL: SMCowley@duanemorris.com | CHERRY HILL |
| BOSTON | | LAKE TAHOE |
| HOUSTON | www.duanemorris.com | MYANMAR |
| DALLAS | | |
| AUSTIN | | ALLIANCES IN MEXICO |
| HANOI | | AND SRI LANKA |
| HO CHI MINH CITY | | |

October 29, 2021

<u>VIA ECF</u>

Honorable James L. Cott
United States Magistrate Judge, S.D.N.Y.
500 Pearl Street, Room 1360
United States Court House
New York, NY  10007

    Re:   *Tom Hussey Photography, LLC v. BDG Media, Inc.*
              C.A. No. 21-cv-03514-AT-JC

Dear Judge Cott:

On behalf of plaintiff Tom Hussey Photography, LLC ("THP"), and pursuant to Section II B 1 of your Individual Practices, I write in opposition to the relief requested in the letter-motion submitted by defendant BDG Media, Inc. ("BDG") dated October 26, 2021 (ECF Doc. 64).

**I. Background Facts**

Plaintiff photography studio is the exclusive owner of copyrights in an award winning and extremely moving series of images created by its sole photographer and owner, Tom Hussey, which he has come to refer to as the Reflections Series.  The first nine images created in that larger series were discovered on the website www.flavorwire.com ("Website") on October 25, 2018 (those nine works are referred to in the Amended Complaint and hereafter as the "Copyrighted Works").  Amended Complaint ("Am. Compl.") ¶ 19 and Exh. G (ECF Doc. 26 and 26-8).  Defendant acquired the Website and other assets in August 2018.  Following the August 2018 acquisition of assets, BDG has had sole control of and responsibility for the operations of the Website.  The party that displayed the Copyrighted Works on the Website on October 25, 2018 (and for some currently unknown period of time after October 2018, but BDG has withheld the documents that will reveal the date) is the defendant, BDG.

To read only BDG's "statement of background facts," however, one would come away believing the actual control of the Website and all its contents did not transfer to BDG in August 2018, but

Honorable James L. Cott
October 29, 2021



instead only "sometime in the first part of 2019." (ECF Doc. 64, p. 1 at ¶ 3). BDG artistically represents that the Copyrighted Works "were not linked or otherwise made visible in the Article at the conclusion of the asset purchase process." (Id.) That sentence would lead one to conclude that after obtaining ownership and control of the Website from its prior owner, BDG never displayed and distributed the Copyrighted Works. That is not accurate.[1] The APA was effective in August 2018, and it appears that BDG's creative phrase refers to the expiration of the post-acquisition earnout period, a date that has no relevance to when BDG took control of all decisions as to which content to display, and how to display content on, the Website. It is clear BDG took that control in 2018 from the fact that all the content surrounding the Copyrighted Works on BDG's Website in October 2018 is content created by and earning revenue for BDG, not the former owner. Am. Compl. ¶¶ 22-31 and Exhs. H – K (ECF Nos. 26, 26-9-26-12).

These misleading arguments characterized as facts are material to the current discovery dispute, because BDG has refused to produce any of the documents concerning the work BDG performed to modify the display of the Copyrighted Works on its Website in 2018, including revising the background script behind the web pages displaying the Copyrighted Works so that they would come up in browser searches. Am. Compl. ¶¶ 35-36 and Exh. L (ECF No. 26, 26-13). Defendant refuses to produce any documents relating to the content that it put on the pages displaying the Copyrighted Works, and refused to identify any current or former employee with knowledge of these issues in its Initial Disclosures and responses to Interrogatories. BDG even went to the extreme of failing to appear at a Rule 30(b)(6) intended solely to identify witnesses with knowledge. In short, all of the factual representations in the letter-motion are disputed and BDG staunchly refuses to provide any meaningful discovery into those allegations.

**II. Discovery Responses At Issue**

**Request for Production 6.** BDG requested THP to produce all documents and communications concerning any other use of the Copyrighted Works, other than BDG's uses giving rise to this lawsuit. The parties agree are two categories of "uses" of the Copyrighted Works – authorized uses and unauthorized infringements. During the meet and confer, I confirmed that the Plaintiff does not intend its scope objection to apply to documents concerning the uses authorized by THP. I agreed that license document relating to the Copyrighted Works will be produced regardless of the date, and that Plaintiff will update its response to make clear that the scope and proportionality objections relate only to infringing uses dating back to one year prior to the creation of the Copyrighted Works. That defined "timeframe" applicable to the Requests purports to require THP to commence its search in 2000, given that the first of the Copyrighted

---

[1] Another creative phrase used in the discussion of alleged "facts" is the characterization of the slide show of Plaintiff's nine Copyrighted Works as an "Article," an irresponsible term for infringing text and infringing images all copied from Plaintiff's website and displayed on the Website without permission. The entire post at issue in this case is infringed content, with no journalistic or editorial work product of any kind accompanying the infringed works.

DM2\14839735.1

Honorable James L. Cott
October 29, 2021

*Duane Morris*

Works was created in 2001.  See Am. Compl. ¶ 9 and Exh. C p. 2 (ECF No. 26 and 26-3 p. 2).  I explained to BDG's counsel during the meet and confer, that the Reflections Series images have been infringed many hundreds of times.  A notice to THP that a Reflections Series image was identified on a website may not identify all of those images on the website in the notice itself, because sometimes all the images do not come up in a search.  To respond to the RFP as written, Plaintiff will have to check each website referenced in each of the many hundreds of notices received, to determine whether one of the nine Copyrighted Works was on that website, then review all documents relating to that notice to see if there are other documents identifying who was responsible for that infringement.  The Plaintiff photography studio is solely owned by its one photographer and employs only one other full time employee, Mr. Hussey's wife, who manages his engagements on projects that take him around the country for days or weeks at a time.  Even if all other operations of the photography studio were shut down, the work tracing through the hundreds upon hundreds of infringement notices identifying a website with one or more Reflections Series images on display would be beyond Mr. and Mrs. Hussey's capacity to identify, gather and produce all the documents called for by RFP 6.  During the meet and confer, I asked BDG's counsel to explain how documents identifying a website in Russia and potentially its owners that displayed one or more of the Copyrighted Works in 2015, for example, could possibly be relevant to any issue in dispute.  BDG's counsel responded that the relevance is to search for possible notice of the display of the Copyrighted Works on the Website before the October 2018 date identified in the Amended Complaint.  I agreed that THP would search for and produce the documents referring to the earliest notice of the use of the Copyrighted Works on the Website, regardless of date.  Since the information they seek will be produced, I asked BDG's counsel what possible reference uses that do not appear on the Website can have to the issues in dispute.  BDG's counsel's only response was that they consider **all** notices of **any** use by anyone at any time to be relevant to this case.  Plaintiff is not aware of any good faith basis for that position, and Plaintiff continues to object to a demand that its two employees undertake a search that may fairly be described as physically impossible for them to complete as contrary the proportionality limitations imposed by Fed. R. Civ. Proc. 26(b)(1).  THP has agreed to produce non-privileged documents identifying infringing users during the same time period covering Defendant's infringing uses of the Copyrighted Works – August 2018 until THP's demand letter was served in January 2020,[2] and is working with its copyright management agency to obtain and produce a printout or report with that information. Plaintiff respectfully believes that the agreed production is sufficient to satisfy Rule 26(b)(1).

---

[2] In footnote 3 of its letter-motion, BDG complains that the relevant time period referenced in THP's discovery responses is unacceptable.  BDG fails to inform the Court that the time period limitation was discussed on a discovery response by discovery response basis and for many of the requests THP agreed to produce documents regardless of the date and BDG's counsel acknowledged there was no unresolved dispute concerning THP's responses to those requests.  To the extent that BDG intends the Court to infer that impasse was reached on that definition of the relevant time period for all responses, such a position is simply false.

DM2\14839735.1

Honorable James L. Cott
October 29, 2021



**Request for Production 11.**  BDG erroneously represents that this RFP requests documents relating to BDG's infringing Pinterest Posts.  It does not.  THP expects only the actual scope of RFP 11 is at issue.  BDG requests documents concerning the first awareness that THP's Copyrighted Works were displayed on the Website.  During the parties meet and confer, BDG complained that the response referenced a first notice from ImageRights and complained that the earliest notice from any source should be produced.  I agreed, unequivocally, and BDG's counsel acknowledged that agreement.  No impasse was reached or declared.  RFP 11 also requests "any steps [Plaintiff] took in response to discovering" that fact, including communications with third parties.  The only objection raised to this aspect of RFP 11 is that it purports to ask for all documents concerning THP's retention of counsel, and everything my firm did pre- and post-commencing a lawsuit.  BDG's counsel assured me that they do not seek such production and suggested that I was being unreasonable to even suggest it.  There was no impasse as to that objection, and no declaration that a motion would be filed to compel production of documents concerning counsel's retention and work.  THP has not objected to producing non-privileged documents and communications relating to actions taken as a result of receiving notice that the Copyrighted Works were displayed in the Website.  No impasse was discussed or reached on any non-privileged documents or communications.  This aspect of the letter-motion is inexplicable and entirely inconsistent with BDG's counsel's certification.

**Interrogatory 6.**  This interrogatory asks THP to identify to identify each person Plaintiff corresponded with concerning the uses of the Copyrighted Works on the Website and in the Pinterest Posts.  THP identified the names of responsive individuals without objection.  BDG's counsel then complained that they knew the response was incomplete because they are aware of correspondence with a representative of the former owner of the Website.  During the meet and confer I told BDG's counsel they were right, and I explained when I first became involved in this matter I mistakenly believed I knew who represented the owner of the Website, because years before I was involved in litigation against that party.  I first wrote a demand to the opposing attorney and followed up with a call to confirm that he was still counsel for that party and would deliver the demand letter.  Receiving no response to the call, I then looked into where the letter should be addressed and learned of the new owner.  I had forgotten my erroneous letter when I worked with THP to prepare the Answers to Interrogatories.  I agreed without condition that Plaintiff will supplement its response to identify the other attorney.  BDG's counsel acknowledged that agreement and asked whether that covers all parties who received a communication that were not already identified.  I responded that it covers all the parties I am aware of, but since BDG's counsel represented that they are aware of correspondence with a representative of the former owner that was not included in response, I asked that they tell me what correspondence was referenced.  BDG's counsel responded that she had no personal knowledge of what correspondence is referenced in the letter requesting the meet and confer.  I asked her to confer with the author of the letter and let me know.  BDG's counsel refused.  The meet and confer reached no impasse on THP's agreement to supplement by identifying the attorney who received my erroneously directed demand letter.  It ended on an impasse whether BDG will confirm that is the correspondence they insist was omitted or identify any different correspondence they claim needs to be included.  I later received an email from counsel who

DM2\14839735.1

Honorable James L. Cott
October 29, 2021



authored the letter purporting to address the issue discussed concerning Interrogatory 6, but instead addressing issues that had nothing to do with the meet and confer discussion whatsoever. I made repeated attempts to redirect the question back to the only pending question – is the correspondence I agreed to include the correspondence she stated she is aware of, or does she contend I need to identify other correspondence and, if so, what? Many acrimonious emails followed. Nevertheless, I confirmed that THP's agreement to supplement during the meet and confer had not changed. When BDG's counsel stated THP refused to supplement this Interrogatory, I corrected her by saying that is contrary to what was stated during the meet and confer. The representation that THP refused to supplement its response to Interrogatory 6 is simply false and THP has no other information about names to be added to the Interrogatory based on correspondence that BDG will not identify.

**Interrogatory 12.** THP identified the only party it has worked with to investigate potential infringements of its copyrighted works without objection. The response went on to acknowledge that THP has heard from time to time that someone is displaying an image. Such comments are exactly as described, random and unsolicited. So THP is aware that there are some people who reported uses that may be infringements to THP, but THP has no files or records of any such reports and cannot reasonably do more to identify someone purporting to have found an infringement. During the meet and confer, BDG's counsel described THP's position as categorizing types of infringement investigations and withholding information about one category. I attempted to correct that misunderstanding, unsuccessfully. THP has identified the one source of investigations of infringements that its records reasonably permit.

**Documents THP Agreed to Produce.** BDG's certification that this issue was discussed and impasse reached during the meet and confer is false. Instead, THP informed BDG's counsel that it was preparing a first set of documents for production to commence rolling production that afternoon. THP has continued production since. BDG's counsel acknowledged the agreement, asked no question about timing for completion and moved on. I raised a desire to discuss a deadline applicable to both parties completing their rolling production that permits both to prepare for depositions. BDG's counsel refused to discuss the topic. I repeated my concern that the discovery deadline was coming up quickly and both parties have an interest in setting a deadline that works. BDG's counsel reminded me that this meet and confer was only to discuss BDG's discovery issues and she did not agree to discuss a deadline for rolling productions. That was not the first, or last, time I asked BDG's counsel to confer on a production deadline. Each time, BDG's counsel refused to confer on the issue. In short, no discussion of completing production of these documents was held, no impasse was reached and no basis to present this as an issue in the letter-motion exists. THP has not altered its agreement to produce the documents referenced, has produced many and is actively working to complete production.

Sincerely,

/s/ Steven M. Cowley

cc:  All Counsel of Record (via ECF)

DM2\14839735.1